IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

v.                                                                  No.     3:07mj39/MD

**WARD FRANKLIN DEAN**
_____

ORDER,
MEMORANDUM OPINION
and
COURT VERDICT

Defendant was charged in this court in a single count information with disclosing the contents of a record and paper used by the Clerk of this Court, contrary to the provisions of The Jury Selection and Service Act of 1968, Title 28 U.S.C. § 1867(f).  (Doc. 1).   Defendant was scheduled for a jury trial, but subsequently waived a jury and requested a bench trial.  (Doc. 49).  The case was tried on May 7, 2007 and the court announced its verdict in open court on May 8, 2007.  This order, memorandum opinion and verdict is entered to provide a record of the court's ruling, findings of fact and conclusions of law, and to confirm its verdict on the issues raised and tried.

A.      Motion to Dismiss.

At the commencement of trial defendant moved *ore tenus* to dismiss the information, claiming that his right to a speedy trial had been denied.  He contended that in granting his earlier motions for continuance, the court had not found on the record that a delay in the trial of the case was required "in the interests of justice." The motion was summarily denied.

The information in this case was filed on January 29, 2007 and defendant first appeared to answer the charge on January 30, 2007. He was arraigned, he pleaded not guilty, and a jury trial was scheduled for March 5, 2007. On February 27, 2007 defendant moved for a continuance, contending that he had been unable to meet with counsel to prepare for trial since his originally appointed assistant federal public defender had resigned and new counsel had just been appointed. The government objected, contending that the sole purpose of defendant's motion was to delay the trial. The motion was granted over the government's objection, the court finding that the motion for continuance was filed through no fault on the part of the defendant. The trial was rescheduled for April 2, 2007 (doc. 23).

On March 30, 2007 defendant filed his second motion for continuance, stating that the Bureau of Prisons[1] had for various reasons, probably unintentionally, interfered with his ability to meet with his attorney to prepare for trial. The government again objected. The court granted the motion after a hearing without making any specific written findings (doc. 45). The court has reviewed the recording of the hearing, and three pertinent matters appear: (1) the court specifically stated that it assumed that by filing the motion, defendant was waiving his right to a speedy trial. Counsel conferred with defendant, and stated "Yes, he [defendant] just answered in the affirmative;" (2) the entire discussion on the motion for continuance revolved around counsel's inability to confer with the defendant to prepare for trial, and (3) the court, in granting the motion for continuance, stated "There is an issue of fairness and justice here. I think that Mr. Dean is at least entitled to have his lawyer prepared enough to get this case tried."

Title 18 U.S.C. § 3161(c)(1) provides that trial on an information must commence within seventy days of the filing of the information or the first appearance of the defendant, whichever occurs later. Since defendant appeared and was

---

[1] Defendant was then serving a sentence at FPC Saufley Field in Pensacola.

arraigned on January 30, 2007, the seventy day time for trial ran on April 10, 2007. However, certain times are excludable from the time calculation, including a delay resulting from a continuance granted at the request of defense counsel (as was done here), if the court "sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). One of the factors the court must consider in reaching an ends-of-justice determination is whether denying the motion "would deny counsel for the defendant . . . the reasonable time necessary for effective preparation, taking into account the exercise of diligence." § 3161(h)(8)(B).

The sole basis for defendant's two motions for continuance was his inability to meet with counsel in spite of the exercise of diligence. Thus, the only basis upon which the motions would or could have been granted was that the ends of justice required it, and the time was therefore excludable. Moreover, the speedy trial time ran at the request of the defendant, not in spite of his desires, and he waived his speedy trial right in open court. As the Eleventh Circuit noted in *United States v. Norton*, 755 F.2d 1428 (11th Cir. 1985), a criminal defendant's motion to dismiss on speedy trial grounds because the defendant's motion for continuance had been granted, "border[s] on frivolity." 755 F.2d at 1429. Moreover, an ends-of-justice continuance is valid without a specific finding, and the delay is therefore excludable, "'so long as there is sufficient evidence in the record indicating that [the court] considered the factors identified in the statute when it granted the continuance.'" *United States v. Williams*, 314 F.3d 552, 556 (11th Cir. 2002) (quoting *United States v. Vasser*, 916 F.2d 624, 627 (1990)). Since inability to prepare for trial was the only factor defendant advanced when he sought continuances, it was obviously the only factor considered, and the court's statements that there was "an issue of fairness and justice" and "Mr. Dean is entitled to have his lawyer prepared enough to get this

case tried," are about as close as the court could come to reciting the magic words without quoting directly from the statute.

Finally, the statute does not require that an ends-of-justice finding be made at the time the motion for continuance is granted, or at any particular time. A finding in the record is all that is required. *See, United States v. Norton, supra* (holding that the court's ends-of-justice finding made when it denied the motion to dismiss was sufficient). And just so there is no doubt, the court in this case granted defendant's two motions for continuance because the ends of justice obviously required it. Defendant had been unable to meet with his attorneys to prepare for trial because of the resignation of one (out of three) of the assistant public defenders in this division, and because of the unusual circumstances of his confinement,[2] and there would likely have been a subsequent claim of miscarriage of justice had defendant and his counsel been required to go to trial unprepared. For the foregoing reason, defendant's *ore tenus* motion to dismiss was and hereby is DENIED.

B.  **Findings of Fact.**

The case was tried to the undersigned without a jury. Based on the testimony of the witnesses and the documentary evidence presented, the court finds as follows:

1.  In March, 2005 defendant was charged in this court on numerous counts of tax evasion, case no. 3:05cv25/LAC (gov't. ex. Doc-3).[3] Shortly before trial, defendant, through counsel, moved for authorization to inspect jury selection records pursuant to 28 U.S.C. §

---

[2] Defendant was serving a sentence at FPC Saufley Field, a minimum security prison, but his freedom to confer with counsel was limited by being sent out on daily work details. Therefore, counsel did not have unfettered access to him as would have been the case were he in a local jail, or free on bond. Indeed, defendant specifically requested that he be allowed to stay at FPC Saufley rather then being housed at the local jail, a request the court granted (docs. 9, 13).

[3] Hereafter all references to exhibits will be to government exhibits unless otherwise noted. The only exhibits received from defendant were form copies of blank Juror Qualification Questionnaires and Summons with Jury Information Form attached (dft. exs. 1 and 2).

1867(a) and (f) (ex. Doc-117). The motion was granted, and defendant was instructed to contact deputy clerk Beatrice Spencer in the court's Tallahassee office. He was also instructed to be mindful of the restraints of the Privacy Act, 5 U.S.C. § 552a and 28 U.S.C. § 1867(f) (ex. Doc-125).

2. Shortly thereafter two individuals appeared at Ms. Spencer's office with a power of attorney executed by defendant, authorizing them to "copy and inspect all records concerning the selection of grand and petit jurors in my case, 3:05cr25LAC . . . ." (Ex. CC-1). Because she was unsure of exactly what the defendant wanted, Ms. Spencer called the defendant, and was told that he wanted Jury Information Forms related to his case. He did not specifically identify nor ask for copies of Jury Qualification Questionnaires, and none were provided (testimony of Ms. Spencer).[4] The defendant's agents were given copies of Jury Information Forms, letters requesting excuse from the summons, and undeliverable summonses (ex. CC-2, ex. CC-3 (sealed)).[5] The Master Wheel in use at the time of defendant's tax evasion trial is still in use and has not been emptied (Spencer).

3. The jury found defendant guilty of the tax evasion charges on December 12, 2005 (ex. Doc-134). All jurors were polled, by name, in open court, and all confirmed the verdict (ex. Doc-153). Defendant was then taken into custody (*id*.).

4. While incarcerated in the Escambia County Jail awaiting sentencing, and while incarcerated in the Santa Rosa County Jail after sentencing, defendant engaged in a series of telephone calls, which were lawfully recorded, with Fred "Sport" Suttles, Leslie Watson, Billy Bass, and Jeff

---

[4] Hereafter "Spencer," or (other named witness).

[5] There are actually three different forms used in the jury selection process. The first form is the Juror Qualification Questionnaire. It asks specific questions concerning citizenship, age, residence, knowledge of English, disabilities and exemptions (dft. Ex. 1). The second form is the Jury Information Form that appears at the bottom of the Summons for Jury Service, and contains the venireman's name, address, social security number, and other sensitive information (dft. Ex. 2). The third form is a questionnaire filled out for use by counsel in jury selection. There was no evidence at trial that these third forms were made available to defendant or anyone else. Although this form was not introduced in evidence, the court can take judicial notice of its own records, *Cash Inn of Dade, Inc. v. Metropolitan Dade County*, 938 F.2d 1239, 1243 (11th Cir.1991) ("A district court may take judicial notice of public records within its files (in this case a blank form) relating to the particular case before it or other related cases."). This form contains the name of the juror but not his or her address, only the city or county of residence, among other things.

LNU, among others. The transcripts of the recordings (and the recordings themselves) clearly show that Leslie Watson had copies of Jury Information Forms, and defendant instructed her to give them (referring to them as questionnaires) to "Pat," so "Pat" could set up interviews with the jurors (ex. T-3). Leslie Watson was not a defense attorney, but worked at the medical clinic that employed the defendant before trial (Burgess). Defendant later told Suttles that he needed to get the names of the trial jurors from the transcript of the trial so Watson could add their addresses and get that information to "Leo," who would contact the jurors (ex. T-5). Defendant later told Suttles that Watson had gone through the questionnaires (ex. T-7). Defendant also acknowledged that the information in the questionnaires was confidential, proclaiming that "the only thing is I can't, you know, go out and disseminate it, and publish it, and put it on my website and stuff like that." (Ex. T-2).

5. On October 23 and again on November 16, 2006, at least nine of the twelve trial jurors were sent letters, at their home addresses, from Wm. O. Jones, whose address was in Jay, Florida. The October letters asked what law the juror "told" the defendant he had broken (referring to a post-trial statement by a "U.S. Attorney" reported in the press that the jury told the defendant what law he had broken); whether the juror had read the charges against the defendant; whether the juror had been provided the "intell" on the charges; whether the juror had been given instructions or guidance by the government; and whether the juror would have voted to convict the defendant if he or she "<u>knew</u> a government witness, a government employee, lied on the stand." (Exs. L-1a to L-1f; L-2a to L-2c) (emphasis in original). The November letters indicated that Jones had received no reply from the juror; asked whether it were possible the juror had been told not to reply; enclosed copies of several pages from the defendant's web site (www.warddeanmd.com), along with a copy of a memorandum to "The Truth Group," authored by Jones, in which he noted it was "odd" that the trial jurors were from Walton, Okaloosa and Escambia Counties, but not from Santa Rosa County, indicated that he (Jones) would be sending information to the trial jurors that they were not allowed to see "by the evil empire," stated his belief that the defendant had been railroaded and that this could happen to others, and commented on the Patriot Act and the number of dead in Iraq, among other things (*id*.). Jones was not a member of defendant's defense team, nor is he a lawyer. He describes himself as "an old guy who lives in a small cabin

        in the woods who has no computer." (Ex. P-1, p. 81).

6. One of the jurors, upon receiving the letters, contacted the district judge's office, and was told to keep them (Griffin). A Deputy United States Marshal and an IRS Criminal Investigator picked up as many of the letters as could be located (Hardy; Burgess).

7. While defendant was incarcerated in FPC Montgomery after being sentenced, a BOP investigator made a lawful search of his cell (Johnson). The search uncovered miscellaneous memoranda and notes authored by the defendant. These notes contained reference to Wm. O. "Bill" Jones, with his complete address (the same address on the letters) and telephone number, among other things, under the date September 24, 2006 (ex. P-1, p. 14); a note dated September 25, 2006 that the defendant "wrote Bill Jones" (*id.*, p. 16); what appears to be a "to do" list dated October 16, 2006 indicating that defendant had sent Bill Jones transcripts of defendant's meeting with the IRS, the trial, and sentencing (*id.*, p. 30); a note indicating defendant wrote to Bill Jones on November 16, 2006 (*id.*, p. 55); a copy of a letter from Wm. O. Jones, dated August 3, 2006, to the "State of Florida Attorney's Office" asking whether it is "against a federal or state law for an individual citizen to contact by mail a juror in a trial which is finished and ask them a question?" (*id.*, p. 80); a letter from BJ (Bill Jones, as identified by his telephone number) to defendant stating "Sunday p.m. I am picking up a some 30 page (sic) document on the grand jury." (*id.*, p. 79); a note by defendant dated December 11, 2006 stating "Pat Shannon - Contact jurors - Should be able to get names from list of jurors" (*id.*, p. 101).

8. The defendant, directly or through third parties, willfully and unlawfully disclosed the contents of a record and paper used by the clerk of this court in connection with the jury selection process, namely, Jury Information Forms, by providing such contents to Leslie Watson or, knowing that Leslie Watson had the forms and their contents, by directing her to give the information to third parties, and that the contents, as defendant had directed and intended, ultimately ended up in the possession of Wm. O. Jones.

**C.     Conclusions of Law.**

After the government rested, defendant moved for judgment of acquittal, arguing that once the names of the jurors became a matter of public record during the tax evasion trial, there could be no lawful prohibition against disclosing information concerning those jurors.  Defendant cited numerous cases, most of which dealt with efforts by the press to obtain juror information during high-profile trials.  For example, in *In Re The Baltimore Sun Company*, 841 F.2d 74 (4th Cir. 1988) the court held that while 18 U.S.C. § 1867(f) protects the contents of the relevant clerk's records, the names of the jurors, after they are seated, "are just as much a part of the public record as any other part of the case, and we think so also are their addresses in order to identify them."  841 F.2d at 75.  Without question the jurors' names became part of the record in defendant's tax evasion case, but there has been no evidence presented showing that their addresses were made part of the public record.  While counsel argued, but did not prove, that addresses were disclosed to counsel in the detailed forms the jurors fill out before trial, those particular forms in fact do not contain addresses or other sensitive information like that contained in the Jury Information Forms (n. 4, *supra*).  Thus, even if the *Baltimore Sun* court was correct in determining that jurors' addresses were public record, a question this court need not address for purposes of this decision, nothing in that case or in any of the others urged by defendant required, much less permitted, the release of the other information included in the Jury Information Forms.

The issue in the instant case is in many ways analogous to the question discussed in *Seattle Times v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d  17 (1984).  There, in a civil defamation action brought by a religious organization against a newspaper, the trial court entered protective orders relating to matters uncovered during discovery.  The newspaper, wanting to publish what it had

Case No: 3:07mj39/MD

learned, appealed. The Supreme Court of Washington ultimately affirmed the validity of the protective orders and the United States Supreme Court granted certiorari. The court succinctly defined the issue: "The critical question this case presents is whether a litigant's freedom comprehends the right to disseminate information that he has obtained pursuant to a court order that both granted him access to that information and placed restraints on the way in which the information might be used." 467 U.S. at 32, 104 S.Ct. at 2207. The Court noted that discovery in civil litigation is not a fundamental right, but is granted by statute or court rules, and the statute or rule that allowed private matters to be found in the discovery process could place restrictions on the information's use. The Supreme Court upheld the protective orders against the newspaper's First Amendment claim.

Also of note is language in *Rhinehart v. Seattle Times*, 654 P.2d 673 (Wash. 1982), the decision that the United States Supreme Court affirmed in *Seattle Times v. Rhinehart, supra*. There Washington's highest court noted that "[a]n argument can be made that when persons are required to give information which they would otherwise be entitled to keep to themselves, in order to secure a government benefit or perform an obligation to that government, those receiving that information waive the right to use it for any purpose except those which are authorized by the agency of government which exacted the information." 654 P.2d at 681. While this language is in no way binding on this court, and while this is a criminal, not a civil, case, the Washington Supreme Court's reasoning is instructive. The jurors in the tax evasion case were required to give personal information they were not otherwise required to disclose in order to perform an obligation to the court. Defendant was statutorily authorized to received that information for a limited purpose - to prepare and present a motion challenging the jury pool or the jury. This right was not a fundamental one. *Test v. United States*, 420 U.S. 28, 95 S.Ct. 749, 42 L.Ed.2d 786 (1975), which confirmed the unqualified right of a criminal defendant to inspect and copy jury lists

and related documents in connection with the preparation and presentation of a motion challenging jury selection procedures, was grounded on the statute, not the Constitution.

The defendant's acquisition of jury selection information was based on a statutory grant, and the same statute constrained defendant's right to disseminate the information. Thus, since according to the evidence presented in this trial the only public information concerning the jurors was their names, only their names could be disclosed to third parties even under defendant's view of the law. He did not have the right to disclose any of the contents of the juror records for any other purpose. *Id*.; 28 U.S.C. § 1867(f). Consequently, the defendant's motion for judgment of acquittal was properly denied.

Furthermore, although there was no direct evidence that the defendant personally disclosed the contents of the Jury Information Forms, the evidence showed that he did so through the agency of Leslie Watson and William O. Jones. Additional persons had possession of or had access to the forms, all with knowledge of or on the instructions of the defendant. The guilt of a defendant can be proven without evidence that a person directly committed the crime if there is evidence that the person did so through the agency of others. *United States v. Broadwell,* 870 F.2d 594, 607 (11th Cir. 1989).

Finally, whether the defendant intended to disclose the protected material for a benign purpose or for a malicious purpose is irrelevant. Whether the jurors' social security numbers or other sensitive information was used in any manner is likewise irrelevant. Disclosure of the clerk's records for any purpose other than filing a motion challenging the jury or the jury pool as provided by law was a criminal act. Defendant's belief that he was constrained only from disseminating or publishing the information by putting it on his website, or similarly, was legally incorrect.

## CONCLUSION

The direct and circumstantial evidence is sufficient for the court to find, and the court does find beyond a reasonable doubt, that the defendant, directly or through third parties, willfully and unlawfully disclosed the contents of a record and paper used by the Clerk of this court in connection with the jury selection process, and the disclosure was not made after the Master Jury Wheel had been emptied and refilled, and was not made pursuant to the district court plan for the random selection of grand and petit jurors, and was not necessary in the preparation and presentation of a motion under Title 28 U.S.C. § § 1867(a) through (c), in violation of Title 28 U.S.C. § 1867(f).

Accordingly, it is ORDERED that the defendant's *ore tenus* motion to dismiss is DENIED.

Having heard the testimony in this case, and having reviewed the documentary evidence, and having determined that the evidence constitutes proof beyond a reasonable doubt, the court finds the defendant, WARD FRANKLIN DEAN:

GUILTY as charged in the Information.

DONE AND ORDERED this 17th day of May, 2007.

/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

Case No: 3:07mj39/MD